The People of the State of New York, Plaintiff, *v.* William F. Kelly, Defendant.

City Magistrate's Court of New York, Borough of Queens, Flushing District Court, June 11, 1953.

*Gilbert S. Rosenthal* for defendant.

*Louis Roos* and *James F. Linsky* for plaintiff.

Shapiro, J. Defendant is charged with violating section 421 of the Penal Law, which so far as here material reads: " Any person * * * who, with intent to sell or in any wise dispose of * * * service or anything offered by such person * * * directly or indirectly, to the public for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto * * * makes, publishes, disseminates, circulates, or places before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other

publication, or in the form of a book, notice, circular, pamphlet, letter, handbill, poster, bill, sign, placard, card, label or tag * * * an advertisement, announcement or statement of any sort regarding * * * service or anything so offered * * * which advertisement contains any assertion, representation or statement of fact which is untrue, deceptive or misleading, shall be guilty of a misdemeanor.''

There is no substantial dispute about the facts. The defendant is a race track '' tout '' who sells his services — predictions of the outcome of horse races — to anyone credulous enough to purchase them.

In an effort to further his business, and to induce '' suckers '' to buy his selection sheets of seven selections for $50, the defendant over a period of time engaged in the following practice: He would telephone his printer in the morning and give the printer his selection of the predicted winners of the *last four races* at the particular track in operation at the time, in this case the Jamaica race track. Later that day, and after ascertaining the winners of the *first four races,* he would notify the printer by telephone of the results of said races. The printer, at defendant's instruction, would then print 3,000 throw-aways and deliver them to the defendant at the track before the last race was over. These sheets (with one exception when the defendant was apparently erroneously informed as to the result of that particular race) would contain the names of the *actual* winners of the *first four races* and the defendant's selections of the winners of the *last four races.*

Defendant would then cause these throw-aways to be distributed free to race track patrons as they left the race track at the end of the day in the quite evident anticipation of the fact that they would purchase his '' tipster '' service in view of his superior ability to pick winners as evidenced by his selection of the winners of the first four races.

It is the People's contention that the above practices constitute a violation of section 421 of the Penal Law.

When this section was originally enacted (L. 1915, ch. 569), it contained a requirement making it incumbent on the People to show that the defendant '' knowingly '' made the representation claimed to be untrue. By amendment of the statute in 1921 (L. 1921, ch. 520), the Legislature made one guilty '' without regard to the honest belief of the person making such a representation that it is true. This was accomplished by omitting the word ' knowingly ' in the amendment of 1921 ''. *(People*

v. *Clarke,* 252 App. Div. 122.) Thus in this case, the defendant would be guilty, if his practices come within the purview of the statute, irrespective of guilty knowledge of the falsity of the printed matter put out by him. There is here, however, no reasonable doubt, in fact no doubt whatever, that the defendant was knowingly and deliberately engaged in a false and fraudulent practice in leading or attempting to lead people to believe that he had in fact picked the winners of the first four races before they were run when in fact he had not done so at all.

His fraudulent intent is made the more evident by the notations he appended to the names of the winners of the first four races, such as " comes to me labeled dinamite " (sic), or " should break maiden here " or " bet plenty and mum's the word ".

The defendant contends, however, that the charge against him must be dismissed because the People have failed to produce any " victim " who in reliance upon the defendant's false and fraudulent representation that he actually picked the winners of the first four races purchased the defendant's touting services.

There is no such requirement in the statute, " for under the terms of the enactment the act of falsely advertising itself completes the crime, regardless of what may transpire subsequently and even though no person presents himself with an offer to purchase." (*People* v. *Roxy Theater,* 8 N. Y. S. 2d 92, 97.)

In *People* v. *Richter's Jewelers* (291 N. Y. 161) the defendant displayed a ring in the " store window with a tag attached stating: ' 1 Ct. Perfect Diamond, Platinum setting, $265.' " An inspector of weights and measures asked to be shown the ring, having no intention to purchase it but doing so solely because she suspected " that the diamond weighed less than one carat and was imperfect." That proved to be the fact. In upholding the conviction the Court of Appeals said (pp. 165–166): " a statement of fact which is untrue, deceptive, or misleading, placed upon a tag ' with intent to sell or in any wise dispose of merchandise ' constitutes a violation of section 421 of the Penal Law even when the statement is made without ' actual evil design or contrivance to perpetrate fraud or injury upon others.' The statutory offense is committed by ' material misrepresentations intended to influence the bargain ' though at times such misrepresentations may be due to lack of care rather than to dishonesty. (*People* v. *Federated Radio Corp.,* 244 N. Y. 33, 39, 41.) "

It is further contended that since the charge against the defendant is a penal one, the statute must be strictly construed against the People, and that, applying such strict construction, the acts of the defendant do not come within its terms.

The contention thus made, though frequently met in briefs of defendants in criminal cases, is only sound when applied to penal provisions found *elsewhere* than in the Penal Law (*People* ·v. *Rosenberg,* 138 N. Y. 410; *People* v. *Thomas,* 71 Misc. 339; *Matter of Citrin* v. *Belcastro,* 196 Misc. 272; *People* v. *Snyder,* 269 App. Div. 985, affd. 295 N. Y. 866), but is not well founded so far as a violation of the Penal Law is concerned, for we are abjured by that law itself (§ 21) that '' The rule that a penal statute is to be strictly construed does not apply to this chapter or any of the provisions thereof, but all such provisions must be construed according to the fair import of their terms, to promote justice and effect the objects of law.''

It is evident that the statute before the court for construction was designed to prevent deceptive, careless or negligent conduct resulting in misrepresentation and to protect the credulous against themselves. A construction which achieves that purpose is in accord with the '' fair import '' of its terms, is designed '' to promote justice and effect the objects of the law '' and does harm only to the wrongdoer who either intentionally or carelessly puts out for public consumption deceptive, misleading or untrue advertising or other printed material. (*People* v. *Reilly,* 255 App. Div. 109, affd. 280 N. Y. 509.)

Accordingly, the defendant's motion to dismiss is denied, and the defendant is held for trial in the Court of Special Sessions.